**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
_____

| | | |
|---|---|---|
| BANKERS LIFE AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| SUCCESS FINANCIAL SOLUTIONS, LLC, BRENT KINDY, SANDOR ZELEKOVITZ, SHANNON PHILLIPS, DANIELLE QUICKLE, JAMES ARTMAN, DENNIS BAILEY, DOMINICK D'AURORA, RICHARD DORMAN, AMY DUNKEL, MICHAEL FORD, SUSAN HOUY, TAMMY LEY, DARNELL MANSON and REGGIE WEAVER, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**<u>COMPLAINT</u>**

Plaintiff Bankers Life and Casualty Company ("Bankers Life"), by and through its undersigned counsel, files the following Complaint against Success Financial Solutions, LLC, and  Brent Kindy, Sandor Zelekovitz, Shannon Phillips, Danielle Quickle, James Artman, Dennis Bailey, Dominick D'Aurora, Richard Dorman, Amy Dunkel, Michael Ford, Susan Houy, Tammy Ley, Darnell Manson and Reggie Weaver (collectively, the "Individual Defendants").  In support thereof, Bankers Life states as follows:

**I.      <u>INTRODUCTION</u>**

1.      From May 2004 until September 2011, Defendant Brent Kindy ("Kindy") was the Branch Sales Manager of Bankers Life's Pittsburgh South branch office.

2.      In this role, Kindy managed numerous employees and mentored numerous contracted agents who wrote policies for insurance and financial products to current and prospective Bankers Life customers.

3.      Following Kindy's abrupt resignation from his position with Bankers Life on September 9, 2011, Kindy began working as the Executive Vice President of Operations for Success Financial Solutions, LLC ("Success Financial"), a direct competitor of Bankers Life.

4.      Since Kindy's resignation, the remaining Individual Defendants have terminated their employment or agency relationships with Bankers Life and have started working under Kindy's management at Success Financial.

5.      In utter disregard of their contractual and fiduciary obligations to Bankers Life, the Individual Defendants have been pursuing an unlawful scheme to misappropriate Bankers Life's confidential/proprietary business information and trade secrets and to divert Bankers Life's valuable business relationships and goodwill from Bankers Life to Success Financial.

6.      In furtherance of this scheme and in direct violation of their contractual obligations to Bankers Life, the Individual Defendants misappropriated confidential/proprietary customer information, including protected health information, and used it after the termination of their employment or agency relationships with Bankers Life to aggressively solicit existing and prospective Bankers Life policyholders, encouraging these customers to terminate their policies with Bankers Life and enter into new policies with Success Financial.

7.      Since the termination of their employment or agency relationship with Bankers Life and in direct violation of their contractual obligations to Bankers Life, Defendants have aggressively solicited other Bankers Life employees and agents to terminate their relationships with Bankers Life in order to work for Success Financial.

8.     Bankers Life believes and therefore avers that unless the relief requested herein is granted by the Court, Defendants will continue this unlawful conduct.  Bankers Life therefore seeks preliminary and permanent injunctive relief to protect its valuable customer, employee and agent relationships, confidential/proprietary information and goodwill, and to stop Defendants' continued efforts to unlawfully compete with Bankers Life.

9.     Enforcement of the lawful obligations owed by Defendants to Bankers Life is appropriate and necessary to protect Bankers Life's legitimate business interests, customer, employment and agent relationships, goodwill and confidential/proprietary information.

10.     Bankers Life will suffer irreparable harm for which it cannot be adequately compensated by monetary damages alone if the preliminary and permanent injunctive relief requested herein is not granted.

## II.     JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Bankers Life seeks recovery, in addition to other causes of action, for several Individual Defendants' violations of the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and their misappropriation of protected health information ("PHI") as regulated by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. § 164.501, et seq.

12.     This Court also has jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs,[1] and is between citizens of different states.

---

[1] See Declaration of Russell Ball, attached hereto as **Exhibit A.**  In addition, Bankers Life is entitled to punitive damages and statutory attorneys' fees under the Pennsylvania Uniform Trade Secrets Act.

13.     Supplemental jurisdiction over Bankers Life's claims under state law also is conferred by 28 U.S.C. §1367.

14.     Venue is proper in this Court under 28 U.S.C. § 1391 because nearly all of the Defendants reside in this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district.

## III.     THE PARTIES

### A.     Plaintiff

15.     Bankers Life is incorporated in Illinois, its principal place of business is in Illinois, and it therefore is a citizen of Illinois.

16.     Bankers Life has branch offices throughout the United States, including the Pittsburgh South branch, located at 7 Parkway Center, Suite 710, 875 Greentree Road, Pittsburgh, Pennsylvania 15220.

17.     Bankers Life is engaged in the business of providing seniors with various insurance and financial products, such as long term care insurance, life annuities, and Medicare Supplement insurance.

18.     In furtherance of its business, Bankers Life utilizes agents (*i.e.*, independent contractors) to provide insurance and financial products to its customers.

19.     By meeting face-to-face with customers, learning detailed information about them (including PHI) and addressing their insurance needs, agents develop, maintain, and advance the relationships between Bankers Life and its customers.

20.     It takes years to develop these customer relationships, which are characterized by low turnover and long-term stability, consistent with the nature of the products at issue – long-term care insurance and life annuities.  Approximately 90% of Bankers Life's policyholders

renew their policies in a given year with Bankers Life, and the business relationship between Bankers Life and its policyholders, on average, lasts approximately nine years.

21.     Bankers Life expends substantial time, labor, and resources to attract, develop, service, and maintain relationships with its customers and to find, train, and develop its agents.

22.     Such relationships are critical because policyholders often develop a relationship with a particular agent with whom they will associate a particular company.

**B.     Defendants**

23.     Success Financial is a Pennsylvania limited liability company that was created on September 14, 2011, just five days after Kindy's resignation from Bankers Life.

24.     Success Financial's principal place of business is located at 7 Parkway Center, Suite 805, 875 Greentree Road, Pittsburgh, Pennsylvania 15220 – notably, in the same building and a floor apart from Bankers Life's Pittsburgh South branch.

25.     Kindy is a citizen of Pennsylvania and, upon information and belief, currently resides at 102 Lawnview Court, Cranberry Township, Pennsylvania 16066.

26.     Defendant Sandor Zelekovitz ("Zelekovitz") is a citizen of Pennsylvania and, upon information and belief, currently resides at 6820 Juniata Place, Pittsburgh, Pennsylvania 15208.  Prior to his abrupt resignation on September 13, 2011, Zelekovitz was employed as the Unit Sales Supervisor at Bankers Life's Pittsburgh South branch.

27.     Defendant Shannon Phillips ("Phillips") is a citizen of Pennsylvania and, upon information and belief, currently resides at 5536 Clark Avenue, Bethel Park, Pennsylvania 15102.  Prior to her abrupt resignation on September 19, 2011, Phillips was employed as the Branch Office Administrator at Bankers Life's Pittsburgh South branch.

28.     Defendant Danielle Quickle ("Quickle") is a citizen of West Virginia and, upon information and belief, currently resides at 1408 Overlook Drive, Weirton, West Virginia 26062. Prior to her abrupt resignation on September 20, 2011, Quickle was a Branch Office Administrator at Bankers Life's Pittsburgh South branch.

29.     Defendant James Artman ("Artman") is a citizen of Pennsylvania and, upon information and belief, currently resides at 621 Scenic Ridge Drive, Venetia, Pennsylvania 16367.  Prior to his abrupt resignation on September 19, 2011, Artman was a contracted agent with Bankers Life.

30.     Defendant Dennis Bailey ("Bailey") is a citizen of Pennsylvania and, upon information and belief, currently resides at 726 Kewanna Avenue, Castle Shannon, Pennsylvania 15234.  Prior to his abrupt resignation on February 14, 2012, Bailey was a contracted agent with Bankers Life.

31.     Defendant Dominick D'Aurora ("D'Aurora") is a citizen of West Virginia and, upon information and belief, currently resides at 104 Logan Court, Bethany, West Virginia 26032.  Prior to his abrupt resignation in February 2012, D'Aurora was a contracted agent with Bankers Life.

32.     Defendant Richard Dorman ("Dorman") is a citizen of Pennsylvania and, upon information and belief, currently resides at 1423 Meadowlark Drive, Pittsburgh, Pennsylvania 15243.  Prior to his abrupt resignation on October 28, 2011, Dorman was a contracted agent with Bankers Life.

33.     Defendant Amy Dunkel ("Dunkel") is a citizen of Pennsylvania and, upon information and belief, currently resides at 3057 Texas Avenue, 1st Floor, Pittsburgh,

Pennsylvania 15216.   Prior to her abrupt resignation on October 20, 2011, Dunkel was a contracted agent with Bankers Life.

34.    Defendant Michael Ford ("Ford") is a citizen of Pennsylvania and, upon information and belief, currently resides at 917 10th Avenue, Apt. 2, New Brighton, Pennsylvania 15066.  Prior to his abrupt resignation on January 27, 2012, Ford was a contracted agent with Bankers Life.

35.    Defendant Susan Houy ("Houy") is a citizen of Pennsylvania and, upon information and belief, currently resides at 1527 Route 68, New Brighton, Pennsylvania 15066. Prior to her abrupt resignation on September 29, 2011, Houy was a contracted agent with Bankers Life.

36.    Defendant Tammy Ley ("Ley") is a citizen of Pennsylvania and, upon information and belief, currently resides at 224 Teece Avenue, Apt. 2, Pittsburgh, Pennsylvania 15202.  Prior to her abrupt resignation in February 2012, Ley was a contracted agent with Bankers Life.

37.    Defendant Darnell Manson ("Manson") is a citizen of Pennsylvania and, upon information and belief, currently resides at 116 Mary Ann Drive, Brentwood, Pennsylvania 15227.  Prior to his abrupt resignation on November 30, 2011, Manson was a contracted agent with Bankers Life.

38.    Defendant Reggie Weaver ("Weaver") is a citizen of Pennsylvania and, upon information and belief, currently resides at 3475 Shadeland Avenue, Pittsburgh, PA 15212. Immediately prior to his current employment and/or agent relationship with Success Financial, Weaver was a contracted agent with Bankers Life.

39.     All of the Individual Defendants began performing services for Bankers Life's Pittsburgh South branch office only after completing an extensive application process, background check, and (with the exception of Phillips or Quickle) insurance licensing requirements.

40.     Throughout their employment and/or agency relationships with Bankers Life, the Individual Defendants received specialized training to succeed in their respective roles at Bankers Life and were paid substantial wages and/or commissions for their work.

## IV.     FACTUAL SUMMARY

41.     As part of Bankers Life's hiring process, on May 4, 2004, Kindy reviewed and executed a Branch Sales Manager ("BSM") Contract with Bankers Life, and reaffirmed his contractual obligations to Bankers Life on February 3, 2006.  A true and correct copy of Kindy's BSM Contract with Bankers Life (excluding compensation schedule) is attached hereto as **Exhibit B.**

42.     Kindy's BSM Contract contains, among other things, important confidentiality and non-disclosure provisions as Kindy had access to the confidential information of all of Bankers Life customers and prospective customers serviced by the Pittsburgh branch office.

43.     For example, the BSM Contract expressly states that "all books and records of every kind pertaining to the business of the Company and the branch sales office belong to and are at all times the sole property of the Company," and the Manager "assumes full responsibility for the security and processing of all contact data in possession of the Manager, recognizing that all such contact data is the Company's property held in a fiduciary capacity." (Ex. B ¶ 10).

44.     The BSM Contract further states:

> Manager acknowledges that confidential information of the Company disclosed to the Manager during the term of this Contract is of a special and

> unique nature and value.  Manager agrees that at any time during, except in the reasonable performance of duties under this Contract, or following the term of this Contract, confidential information obtained by the Manager will not be, directly or indirectly, divulged or disclosed for any purpose whatsoever, if such confidential information was obtained by or disclosed to the Manager by the Company.  In the event of breach or threatened breach of this paragraph, the Manager agrees that the Company shall be entitled to seek all appropriate remedies including, without limitation, injunctive relief and monetary damages.

(Ex. B ¶ 22).

45.     Upon the termination of Kindy's BSM Contract, Kindy was required to "promptly return to the Company all literature, forms, manuals, supplies, customer lists, contact data and other written or printed information in any way pertaining to the business of the Company whether furnished by the Company or purchased by the Manager." (Ex. B ¶ 20(c)).

46.     Kindy's BSM Contract also contains, among other things, important non-solicitation provisions.

47.     Specifically, the BSM Contract states:

> During the term of this Contract and for 24 months thereafter, within the territory regularly serviced by the Manager's branch sales office, the manager shall not, personally or through the efforts of others, induce or attempt to induce:
>
>> (a)  any agent, branch sales manager, field vice president, employee, consultant or other similar representative of the company to curtail, resign or sever a relationship with the company.
>>
>> (b)  any agent branch sales manager, field vice president or employee of the Company to contract with or sell insurance business with any company not affiliated with the Company, or
>>
>> (c)  any policy holder of the Company to relinquish, surrender, replace or lapse any policy issued by the Company.
>
> In the event of breach or threatened breach of any of these covenants, the Manager agrees that the Company shall be entitled to seek all appropriate remedies, including without limitation, injunctive relief and money damages.

9

(Ex. B ¶ 21).

48.     Upon information and belief, Kindy informed Zelekovitz, Bankers Life Unit Sales Supervisor, and Shannon Phillips, Bankers Life Branch Office Administrator of his plans to leave Bankers Life to start working for Success Financial.

49.     On September 8, 2011, the day before Kindy's resignation from Bankers Life, Zelekovitz downloaded 1464 customer list reports and Phillips downloaded 9,368 customer list reports from Bankers Life's computer system.

50.     Kindy was the only person who could authorize the downloading of such large amounts of client data.

51.     Zelekovitz resigned from his employment with Bankers Life on September 13, 2011 (four days after Kindy) and Phillips resigned from her employment with Bankers Life on September 19, 2011 (ten days after Kindy).

52.     On September 16, 2011, Quickle downloaded 324 customer list reports from Bankers Life's computer system, and then resigned from her employment with Bankers Life on September 20, 2011 (the day after Phillips resigned).

53.     Shortly thereafter, Zelekovitz, Quickle and Phillips began working for Success Financial under Kindy's management.

54.     On October 24, 2011, counsel for Bankers Life sent a cease and desist letter to Kindy after five agents terminated their contracts with Bankers Life and went to work for Success Financial under Kindy's management.  A true and correct copy of the October 24, 2011 letter is attached hereto as **Exhibit C.**

55.     In that letter, Kindy was also made aware of Zelekovitz's and Phillips improper downloads and retention of Bankers Life's confidential and proprietary information.  (See Ex. C).

56.     On October 26, 2011, counsel for Kindy responded to the October 24, 2011 cease and desist letter by stating that all confidential and/or proprietary information retained from Bankers Life had been returned, and that Kindy did not violate any contractual obligations to Bankers Life because he simply accepted dissatisfied former Bankers Life workers and agents at business venture without inducing or soliciting them to leave Bankers Life.  A true and correct copy of the October 26, 2011 letter from Kindy's counsel is attached hereto as **Exhibit D.**

57.     The terms of Zelekovitz's employment with Bankers Life were governed by his Unit Sales Supervisor ("USV") Contract, a copy of which is attached hereto as **Exhibit E.**

58.     The USV Contract contains nearly identical provisions to Kindy's BSM Contract regarding the confidentiality of Bankers Life's business information and the prompt return to Bankers Life of "all literature, forms, manuals, supplies, customer lists, contact data and other written or printed information in any way pertaining to the business of the Company whether furnished by the Company or purchased by the Unit Supervisor."  (Ex. E ¶¶ 20, 22).

59.     Such confidentiality provisions were necessary because, as a USV, Zelekovitz had access to all of the Bankers Life customers and prospective customers serviced by the Pittsburgh branch office.

60.     The USV Contract also contains important non-solicitation provisions:

> During the term of this Contract and for 24 months thereafter, within the territory regularly serviced by the Unit Supervisor's branch sales office, the Unit Supervisor shall not, personally or through the efforts of others, induce or attempt to induce:
>
> > (a) any agent, Unit or Branch Sales Manager, Territory Vice President, employee, consultant or other similar representative of the company to curtail, resign or sever a relationship with the company.
> >
> > (b) any agent Unit or Branch Sales Manager, Territory Vice Presiden, or employee of the Company to contract with or sell insurance business with any company not affiliated with the Company, or

> (c) any policy holder of the Company to relinquish, surrender, replace or lapse any policy issued by the Company.
>
> In the event of breach or threatened breach of any of these covenants, the Unit Supervisor agrees that the Company shall be entitled to seek all appropriate remedies, including without limitation, injunctive relief and money damages.

(Ex. E ¶ 21).

61.     On September 15, 2011, counsel for Bankers Life sent Zelekovitz a cease and desist letter reminding Zelekovitz of his fiduciary and contractual obligations to Bankers Life and demanding that he return any and all Bankers Life property in his possession, including the 1464 improperly downloaded files from Bankers Life's computer system.  A copy of the September 15, 2011 cease and desist letter is attached hereto as **Exhibit F.**

62.     On September 21, 2011, Zelekovitz responded to the cease and desist letter he received from Bankers Life's counsel stating that:   (a) he has not and will not use any of Bankers Life's confidential information; (b) he returned the items referenced in this cease and desist letter; and (c) he will cease and desist from violating any and all terms per his contract with Bankers Life.  A true and correct copy of Zelekovitz's September 21, 2011 response letter is attached hereto as **Exhibit G.**

63.     On or about September 22, 2011, Zelekovitz returned to Bankers Life the 1464 client records that he improperly downloaded on September 8, 2011.

64.     Shortly thereafter, Bankers Life learned that Zelekovitz did not return all of his Bankers Life "factfinders" upon his resignation from employment with Bankers Life. Factfinders contain policyholder needs assessments, coverage reviews, data forms, PHI, medical expenses, and retirement income/savings.

65.     On November 1, 2011, counsel for Bankers Life sent a demand letter for all factfinders in Zelekovitz's possession to Zelekovitz's counsel.  A true and correct copy of such letter is attached hereto as **Exhibit H**.

66.     On November 3, 2011, Zelekovitz returned the missing factfinders to Bankers Life.

67.     During the course of their employment with Bankers Life, Phillips and Quickle were obligated to abide by a Confidential Information and Inventions Agreement, a copy of which is attached hereto as **Exhibit I.**

68.     The Confidential Information and Inventions Agreement expressly provides:

I agree that all proprietary information relating to and used in the business of Company, including without limitation, . . . customer lists and requirements, prospective customer lists, policyholder and client information, and all other proprietary information, documents, and records regarding the business of Company not voluntarily made public by the Company (collectively "Confidential Information") is the property of Company, and is and will remain proprietary and confidential.  I agree not to use such Confidential Information other than for the Company's benefit or divulge any such Confidential Information to anyone, including other Company employees, other than persons who are entitled or authorized to know, and to surrender to Company all such Confidential Information in my possession and control at the termination of my employment.  My obligations under this paragraph will continue even after I leave my employment with the Company.

(Ex. I ¶ 1).

69.     On September 20, 2011, counsel for Bankers Life sent Phillips a cease and desist letter reminding Phillips of her fiduciary and contractual obligations to Bankers Life and demanding that she return any and all Bankers Life property in her possession, including the 9,368 improperly downloaded files from Bankers Life's computer system.  A copy of the September 20, 2011 cease and desist letter is attached hereto as **Exhibit J.**

70.     On September 22, 2011, Phillips responded to the cease and desist letter she received from Bankers Life's counsel stating that:  (a) it was part of her job at Bankers Life to download client information to provide to the USM and agents and did so at the request of her superiors up to the time of the end of her employment with Bankers Life; (b) she did not remove any policyholder information and/or trade secrets from Bankers Life; and (c) she has no such information in her possession.  A true and correct copy of Phillips' September 21, 2011 response letter is attached hereto as **Exhibit K.**

71.     On November 8, 2011, counsel for Bankers Life sent another letter to counsel for Phillips requesting that Phillips unequivocally confirm that she has no confidential or proprietary Bankers Life property in her possession.  A true and correct copy of the November 8, 2011 letter is attached hereto as **Exhibit L.**

72.      On November 9, 2011, Phillips sent a signed statement to Bankers Life stating that:  (a)  she does not have any Bankers Life proprietary or confidential information in her custody, possession or control; and (2) she "never had, and do not currently have, any Bankers Life 'fact finders' in her custody, possession or control."  A true and correct copy of Phillips' confirmation is attached hereto as **Exhibit M.**

73.     To date, Bankers Life has never received the 9368 client records improperly downloaded by Phillips on September 8, 2011, or the 324 client records improperly downloaded by Quickle on September 16, 2011.

74.     Between the time of Kindy's resignation on September 9, 2011 and February 14, 2012, fourteen (14) agents have terminated their Agent Contracts with Bankers Life, including but not limited to, Artman, Bailey, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley, Manson and

Weaver (collectively, the "Agent Defendants").  Upon information and belief, each of these individuals is now working for Success Financial under Kindy's management.

75.     Bankers Life requires that all of its agents review and execute an Agent Contract prior to being appointed with Bankers Life.  The Agent Contract (excluding commission schedules) and signature pages for each of the Agent Defendants are attached hereto as **Exhibit N.**

76.     The Agent Contract contains, among other things, important confidentiality, non-disclosure and non-solicitation provisions.

77.     With respect to confidentiality, Paragraph 6 of the Agent Contract states, in pertinent part, as follows:

> 6(c). The Agent agrees that any and all "Nonpublic Personal Information" obtained by the Agent on behalf of or from Bankers Life and Casualty . . . shall be used by [him/her] only as necessary to fulfill [his/her] obligations under this Contract . . .
>
> "Nonpublic Personal Information" . . . includes but is not limited to name, address, and financial or health information of a policyholder, insured, applicant, or prospect.
>
> This subsection survives the termination of the Agent Contract.
>
> (d).  The Agent agrees to the provisions, terms, responsibilities and duties as set forth in Addendum "A" of this Contract entitled "Business Associate Agreement" that pertains to the privacy and protection of Protected Health Information (PHI) as regulated under the Privacy Rules of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).
>
> This subsection also survives the termination of the Agent Contract.

(Ex. N ¶ 6).

78.     Paragraph 15 of the Agent Contract also address confidentiality and provides:

> 15. The Company will supply rate information, sales manuals and forms for the solicitation of applications for insurance.  The Agent acknowledges that all names, policyholder cards and contact data furnished by the Company is specialized and confidential information not generally known in the industry.

The Agent further acknowledges that the identity and insurance needs of the Company's clients are not generally known in the industry and that the Company has a proprietary interest in the identity of the Company's customers and customer list.  Agent agrees to hold all names, policyholder cards, contact data and customer list in a fiduciary capacity and agrees not to divulge the names, policyholder cards or other contact data to any other Company, agency or person.  The Agent agrees to return all rate information, sales manuals, forms, policyholder cards, contact data, and customer lists to the Company upon demand or upon termination as provided in paragraph 22 thereof [which states that "[u]pon termination of this contract, the Agent will promptly return to the Company any and all literature, forms, manuals, supplies, lists, contact data, policyholder lists and other written or printed information in any way pertaining to the business of the Company."]

In the event of breach or threatened breach of this section, the Agent agrees that the Company shall be entitled to seek all appropriate remedies, including without limitation, injunctive relief and monetary damages.

(Ex. N ¶ 15).

79.     In addition, the Agent Contract encompasses a Business Associate Agreement, which provides that Bankers Life agents "shall not use or further disclose PHI created or received on behalf of or from [Bankers Life] in any manner other than as permitted or required by the Agreement, or as permitted or required by law."  (Ex. N at p. 8, § b).

80.     The Business Associate Agreement further obligated Bankers Life agents "to use appropriate safeguards, including the implementation of administrative, physical and technical safeguards, to prevent the use or disclosure of PHI other than as provided for under the Agreement."  (Ex. N at p. 8, § c).

81.     The Agent Contract also contains the following non-solicitation provisions:

24.  During the term of this Contract and for 24 months thereafter, within the territory regularly serviced by the branch sales office of the Company where the Agent normally submits business, the Agent shall not, personally or through the efforts of others, induce or attempt to induce:

(a) any agent, branch sales manager, divisional vice president, employee, consultant or other similar representative of the Company to curtail, resign or sever a relationship with the Company.

. . .

(c) any policyholder of the Company to relinquish, surrender, replace, or lapse any policy issued by the Company.

In the event of breach or threatened breach of any of these covenants, the Agent agrees that the Company shall be entitled to seek all appropriate remedies, including without limitations, injunctive relief and monetary damages.

(Ex. N ¶ 24).

82.     The restricted territory (as set forth in paragraph 24 of the Agent Contract) is comprised of the Pittsburgh area and surrounding regions of Pennsylvania, as that is the territory serviced by the Bankers Life's Pittsburgh branch, to which the Agent Defendants normally submitted business.

83.     Furthermore, the Agent Contract requires that the "Agent's conduct shall be fair, honest, lawful and courteous, and shall not adversely affect the business, goodwill, or reputation of the company."  (Ex. N ¶ 17).

84.     With this executed Agent Contract in place, Bankers Life gave the Agent Defendants access to the confidential/proprietary and trade secret information described in Paragraphs 6 and 15 of the Agent Contract – namely, confidential rate information, sales manuals, customer lists, policyholder cards, customer leads and contact data.  By having access to the policyholder cards and policyholder contact data, in particular, the Agent Defendants became privy to confidential policyholder information including, without limitation, the policyholders' names, addresses, contact information, PHI, dates of birth, social security numbers, and the policies each policyholder has with Bankers Life, the coverage provided by those policies, and the premiums paid by the policyholders.

85.     While performing services for Bankers Life, the Agent Defendants utilized all of the confidential/proprietary and trade secret information described above in identifying Bankers Life's current and prospective customers, interfacing with them, and selling them various insurance and financial products.  Indeed, the Agent Defendants could not have performed any of these services on behalf of Bankers Life without such information, and the Agent Defendants would not have learned or otherwise had access to such information, but for their appointment as a Bankers Life Agent.

86.     By signing their Agent Contracts, the Agent Defendants acknowledged the confidential/proprietary and trade secret nature of the information described above and agreed not to misappropriate such information in any way.  (Ex. N ¶¶ 6, 15).

87.     In addition to requiring all agents to sign an Agent Contract, Bankers Life took and still takes additional measures to guard against the unauthorized disclosure of its confidential/proprietary and trade secret information.  For instance, all policyholder cards, policyholder contact information, and the like are stored in password-protected computer databases that can only be accessed by Bankers Life employees and contracted agents.  Only Bankers Life employees and current agents contracted with Bankers Life have access to such files.

88.     Prior to the termination of their contracts with Bankers Life, several Agent Defendants removed confidential policyholder information from the Bankers Life database and office without the authorization of Bankers Life.

89.     Agent Defendants D'Aurora, Dorman, Dunkel, Ford, Houy, Ley, and Manson collectively downloaded  over 1,000 client list reports in the days and weeks leading up to the termination of their Agent Contracts with Bankers Life.

90.     On October 28, 2011, counsel for Bankers Life sent a cease and desist letter to Dunkel reminding her of her obligations under her Agent Contract and demanding that she return all Bankers Life confidential and/or proprietary information removed from Bankers Life's Pittsburgh branch office.  A true and correct copy of the October 28, 2011 cease and desist letter is attached hereto as **Exhibit O.**

91.     On November 7, 2011, Dunkel returned some of the Bankers Life confidential and/or proprietary information in her possession, but did not return the client list reports she downloaded prior to resigning from her employment with Bankers Life.

92.     On November 4, 2011, and again on November 21, 2011, counsel for Bankers Life sent cease and desist letters to Dorman reminding him of his obligations under his Agent Contract and demanding that he return all Bankers Life confidential and/or proprietary information removed from Bankers Life's Pittsburgh branch office.  A true and correct copy of the cease and desist letters sent to Dorman are attached hereto as **Exhibit P.**

93.     Dorman failed to return the improperly downloaded client lists and has not responded to either cease and desist letter.

94.     On December 30, 2011, counsel for Bankers Life sent a cease and desist letter to Artman after learning that Artman had contacted two Bankers Life policyholders for the purpose of soliciting them to relinquish, surrender, replace, or lapse their Bankers Life policies and sell them policies offered through Success Financial.  The cease and desist letter further demanded that Artman return any Bankers Life confidential and/or proprietary information in his possession.  A true and correct copy of the cease and desist letters sent to Artman are attached hereto as **Exhibit Q.**

95.     Artman did not respond to the December 30, 2011 cease and desist letter.

96.     On December 30, 2011, and again on January 26, 2012, counsel for Bankers Life sent cease and desist letters to Manson after learning that Manson had contacted four Bankers Life policyholders for the purpose of soliciting them to relinquish, surrender, replace, or lapse their Bankers Life policies and to sell them policies offered through Success Financial.  The cease and desist letters further demanded that Manson return any Bankers Life confidential and/or proprietary information.   A true and correct copy of the cease and desist letters sent to Manson are attached hereto as **Exhibit R.**

97.     On February 8, 2012, Manson faxed a response to Bankers Life's cease and desist letters, which denied violating the terms of his Agent Contract with Bankers Life and characterized his contact with one current Bankers Life policyholder as a friendship.   Manson's response did not address his contacts with the other three Bankers Life policyholders.  A true and correct copy of Manson's response is attached hereto as **Exhibit S.**

98.     On January 26, 2012 and again on February 7, 2012, counsel for Bankers Life sent additional cease and desist letters to Zelekovitz after learning that Zelekovitz contacted two Bankers Life policyholders with Manson for the purpose of soliciting them to relinquish, surrender, replace, or lapse their Bankers Life policies and to sell them policies offered through Success Financial.   A true and correct copy of the additional cease and desist letters sent to Zelekovitz are attached hereto as **Exhibit T.**

99.     On February 7, 2012, counsel for Bankers Life sent cease and desist letters to both D'Aurora and Ley reminding them of their obligations under their Agent Contracts and demanding that they return all Bankers Life confidential and/or proprietary information removed from Bankers Life's Pittsburgh branch office.  A true and correct copy of the cease and desist letters sent to D'Aurora and Ley are attached hereto as **Exhibit U.**

100.    After being apprised of their legal obligations through Bankers Life's cease and desist letters, D'Aurora and Ley continued to violate the terms of their Agent Contracts by soliciting two current Bankers Life policyholders for the purpose of relinquishing, surrendering, replacing, or lapsing their Bankers Life policies with policies offered through Success Financial.

101.    In addition, D'Aurora expressly violated the terms of his Agent Contract by soliciting Bankers Life agent Michael Lambros for the purpose of inducing him to terminate his contract with Bankers Life and begin working for Success Financial under Kindy's management.

102.    Bankers Life recently learned from two current policyholders that two former Bankers Life agents, Bailey and Weaver had contacted them to set up appointments to review insurance policy options after the termination of their Agent Contracts with Bankers Life.

103.    Upon information and belief, all of the Defendants have shared Bankers Life's confidential/proprietary information including customer lists, pricing, marketing materials, customer leads, presentation materials and training materials to their individual benefit and to the benefit of Success Financial in violation of their fiduciary and contractual obligations to Bankers Life.

104.    Upon information and belief, Zelekovitz, Phillips, Quickle and the Agent Defendants conspired with Success Financial and Brent Kindy to violate the confidentiality, non-disclosure and non-solicitation provisions of their various contractual obligations with Bankers Life.

105.    Immediately prior to and after his September 9, 2011 resignation from employment with Bankers Life, Kindy communicated with several Bankers Life agents and employees and encouraged them to terminate their employment and agency relationships with Bankers Life in order to work with him at his new business venture, Success Financial.

106.    Upon information and belief, the Agent Defendants, upon the termination of their contracts with Bankers Life, continued to solicit other Bankers Life agents for the purpose of inducing them to terminate their contracts with Bankers Life and to begin working for Success Financial under Kindy's management.

107.    Although he was fully apprised of his legal obligations through several cease and desist letters, Zelekovitz knowingly and intentionally solicited Bankers Life policyholders in an attempt to induce them to relinquish, surrender, replace, or lapse policies with Bankers Life and purchase other insurance policies offered through Success Financial.

108.    Zelekovitz also knowingly aided and abetted other former Bankers Life agents to do the same.

109.    Upon information and belief, several Agent Defendants also used unlawfully retained Bankers Life customer lists to contact and meet with Bankers Life policyholders for the purpose of offering them different policies through Success Financial in clear violation of their contractual obligations to Bankers Life.

110.    Defendants' unauthorized possession and unlawful utilization of policyholder contact data and other confidential business information has caused and will continue to cause Bankers Life substantial and irreparable injury, for which Bankers Life now seeks appropriate relief.

## V.    SPECIFIC CAUSES OF ACTION

### COUNT I: Breach of Contract (Confidentiality Provisions)
### Bankers Life v. All Individual Defendants

111.    Paragraphs 1 through 110 of this Complaint are fully incorporated herein by reference.

112.    Kindy voluntarily entered into the BSM Contract upon his employment with Bankers Life after reviewing and understanding the confidentiality and non-disclosure provisions of that agreement.

113.    Zelekovitz voluntarily entered into the USV Contract upon his promotion to USV of Bankers Life's Pittsburgh branch office after reviewing and understanding the confidentiality, and non-disclosure provisions of that agreement.

114.    Phillips and Quickle voluntarily entered into Confidential Information and Inventions Agreements with Bankers Life at the time of their hiring as Branch Office Administrators at Bankers Life's Pittsburgh branch office after reviewing and understanding the confidentiality and non-disclosure provisions regarding Bankers Life's confidential/proprietary information.

115.    The Agent Defendants voluntary entered into their Agent Contracts with Bankers Life after reviewing and understanding the confidentiality and non-disclosure provisions of their Agent Contracts.

116.    The aforementioned contracts are valid and enforceable under Pennsylvania law.

117.    Bankers Life has performed all of its obligations under the BSM, USV and Agent Contracts.

118.    In violation of their various contractual obligations to Bankers Life, the Individual Defendants have improperly downloaded, removed, disclosed and/or shared Bankers Life's confidential/proprietary information with Success Financial and each other for their own individual benefit and to the benefit of Success Financial.

119.    Bankers Life has suffered actual damages as a result of the Individual Defendants' breaches of the confidentiality and non-disclosure provisions of their respective contracts.

120.     Bankers Life has suffered and will continue to suffer irreparable harm as a direct result of the Individual Defendants' breaches of the confidentiality and non-disclosure provisions of their respective contracts until such time as they are ordered to:  (1) cease all use of Bankers Life's confidential/proprietary and trade secret information to solicit current and prospective Bankers Life policyholders; and (2) return all confidential/proprietary and trade secret information (and any copies of such information provided to any other person) to Bankers Life.

121.     Injunctive relief is necessary as the recovery of money damages alone would not fully compensate Bankers Life for Individual Defendants' multiple breaches of the confidentiality and non-disclosure provisions of their respective contracts.

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

### COUNT II:  Breach of Contract (Non-Solicitation Provisions)
### Bankers Life v. Kindy, Zelekovitz, Artman, Bailey, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley, Manson and Weaver

122.     Paragraphs 1 through 121 of this Complaint are fully incorporated herein by reference.

123.     In their respective contracts with Bankers Life, Kindy, Zelekovitz, Artman, Bailey, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley, Manson and Weaver agreed that they would not personally or through the efforts of others induce or attempt to induce other Bankers Life agents to curtail, resign or sever their relationships with Bankers Life.

124.     Kindy, Zelekovitz, Artman, Bailey, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley, Manson and Weaver also agreed that they would not personally or through the efforts of others induce or attempt to induce any Bankers Life policyholder to relinquish, surrender, replace, or lapse any policy issued by Bankers Life.

125.     The non-solicitation provisions as contained in the BSM, USV and Agent Contracts are reasonably necessary to protect legitimate business interests of Bankers Life, namely its near-permanent customer relationships and Bankers Life's confidential/proprietary and trade secret information.

126.     The non-solicitation provisions are reasonable as to time and geographic scope.

127.     Kindy, Zelekovitz, Artman, Bailey, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley, Manson and Weaver breached the non-solicitation provisions contained in their respective contracts with Bankers Life.

128.     Kindy, Zelekovitz, Artman, Bailey, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley, Manson and Weaver, personally or through the efforts of others, induced or attempted to induce Bankers Life agents to sever their contracts with Bankers Life.

129.     Kindy, Zelekovitz, Artman, Bailey, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley, Manson and Weaver, personally or through the efforts of others, also induced or attempted to induce policyholders to relinquish, surrender, replace, or lapse a policy issued by Bankers Life.

130.     Bankers Life has suffered and will continue to suffer irreparable harm as a direct result of the aforementioned breaches of the non-solicitation provisions contained in the BSM, USV and Agent Contracts until such time as Defendants are ordered to:  (1) cease all solicitation of current Bankers Life agents; (2) cease all solicitation of current and prospective Bankers Life policyholders.

131.     Injunctive relief is necessary as the recovery of money damages alone would not fully compensate Bankers Life for the multiple breaches of the non-solicitation provisions contained in the BSM, USV and Agent Contracts by Kindy, Zelekovitz, Artman, Bailey, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley, Manson and Weaver.

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

### COUNT III:  Breach of Fiduciary and Common Law Duties to Bankers Life
### Bankers Life v. Kindy, Zelekovitz, Phillips and Quickle

132.     Paragraphs 1 through 131 of this Complaint are fully incorporated herein by reference.

133.     While employed by Bankers Life, Kindy, Zelekovitz, Phillips and Quickle were in positions of trust and confidence within Bankers Life and, as such, owed duties of loyalty, good faith and fair dealing to Bankers Life both during and after their employment relationship with Bankers Life.

134.     By engaging in the conduct described above, Kindy, Zelekovitz, Phillips and Quickle have breached the fiduciary and common law duties owed by them to Bankers Life by intentionally failing to act in good faith and solely for the benefit of Bankers Life.

135.     The conduct of Kindy, Zelekovitz, Phillips and Quickle was and is willful, intentional and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Bankers Life.

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

### COUNT IV:  Tortious Interference With Business Relations
### Bankers Life v. All Defendants

136.     Paragraphs 1 through 135 of this Complaint are fully incorporated herein by reference.

137.     Upon information and belief, Kindy encouraged Zelekovitz, Phillips and Quickle to join his new business venture with Success Financial with full knowledge of not only his own

fiduciary and contractual obligations to Bankers Life, but also the fiduciary and contractual obligations Zelekovitz, Phillips and Quickle owed to Bankers Life.

138.    Success Financial, Kindy, Zelekovitz, Phillips and Quickle have also knowingly and willfully interfered with the contractual relationships Bankers Life maintained with its agents working in the Pittsburgh branch office.

139.    The Agent Defendants, with full knowledge of their continuing contractual obligations to Bankers Life, have solicited other Bankers Life agents for the purpose of inducing them to terminate their contracts with Bankers Life and to work for Success Financial under Kindy's management.

140.    Upon information and belief, Zelekovitz and all of the Agent Defendants, in direct violation of their contractual obligations to Bankers Life, have contacted current Bankers Life policyholders for the purpose of inducing the policyholders to cancel, lapse, or replace their policies with Bankers Life and purchase new policies sold through Success Financial.

141.    Defendants' conduct in interfering with Bankers Life's existing contractual relations was and is willful, intentional and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Bankers Life.

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

## COUNT V: Civil Conspiracy
## Bankers Life v. All Defendants

142.    Paragraphs 1 through 141 of this Complaint are fully incorporated herein by reference.

143.    Defendants by engaging in the conduct described above, have agreed and conspired to commit unlawful acts against Bankers Life and/or engage in competition with

Bankers Life by unlawful means, with an intent to injure Bankers Life, and will continue to take acts in furtherance of such conspiracy.

144.    Upon information and belief, Kindy has unlawfully conspired with Success Financial and its current agents and/or employees, to commit such unlawful acts against Bankers Life and/or engage in competition with Bankers Life by unlawful means.

145.    Defendants' conduct was and is willful, intentional and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Bankers Life.

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

### COUNT VI:  Misappropriation of Trade Secrets
### Bankers Life v. All Defendants

146.    Paragraphs 1 through 145 of this Complaint are fully incorporated herein by reference.

147.    While employed by or under contract with Bankers Life, the Individual Defendants had access to the confidential customer information of thousands of policyholders, including PHI.  The Individual Defendants also had access to the confidential information of prospective customers of Bankers Life policies.

148.    These trade secrets are of great economic value to Bankers Life, and are not readily ascertainable by other proper means.

149.    As such, Bankers Life has made reasonable efforts to protect the confidentiality of its trade secrets, including but not limited to, the restrictive covenants contained in its BSM, USV and Agent Contracts, as well as the confidentiality provisions contained in its Confidential Information and Inventions Agreement.

150.    The Individual Defendants knew or should have known that they had an obligation to maintain the secrecy of such information and use it only for the benefit of Bankers Life.

151.    Instead, the Individual Defendants disclosed to Success Financial and each other Bankers Life's confidential and/or proprietary information for their own benefit and to the benefit of Success Financial.

152.    By engaging in the conduct set forth above, Defendants have misappropriated, and threaten to misappropriate, Bankers Life's confidential/ proprietary information and trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C. S. §5301 *et seq.,* and common law.  Moreover, the disclosure of such trade secret information is inevitable as a result of Defendants' actions and apparent plans.

153.    Defendants' conduct was and is willful, intentional and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Bankers Life.

154.    Bankers Life is therefore entitled to recover for both the actual loss caused by the misappropriation, and the unjust enrichment caused by the misappropriation, pursuant to 12 Pa. C. S. § 5304.

155.    In addition, Bankers Life is entitled to its attorneys' fees pursuant to 12 Pa. C. S. § 5305.

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

## COUNT VII:  Conversion of Corporate Assets
## Bankers Life v. All Defendants

156.    Paragraphs 1 through 155 of this Complaint are fully incorporated herein by reference.

157.    Bankers Life has the absolute and unconditional right to its documents containing Bankers Life's confidential/proprietary and trade secret information and the immediate possession of such property.

158.    Pursuant the terms of Bankers Life's BSM, USV and Agent Contracts, as well as its Confidential Information and Inventions Agreement, the Individual Defendants agreed to return all of Bankers Life's documents, including, without limitation, documents containing Bankers Life's confidential/proprietary and trade secret information.

159.    The Individual Defendants have retained at least some of Bankers Life's property for their own use and for the benefit of Kindy's new business venture, Success Finncial, with the intent to permanently deprive Bankers Life of that property.

160.    Defendants, without the authorization of Bankers Life, wrongfully assumed control, dominion, and/or ownership over Bankers Life's property.

161.    Bankers Life has suffered actual damages as a result of Defendants' acts of conversion.

162.    Bankers Life has suffered and will continue to suffer irreparable harm as a direct result of Defendants' acts of conversion.

163.    Injunctive relief is necessary as the recovery of money damages alone would not fully compensate Bankers Life for Defendants' acts of conversion.

164.    Defendants' conduct as alleged herein was willful and malicious and entitles Bankers Life to recover punitive damages.

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

## COUNT VIII:  Unjust Enrichment and Constructive Trust
## Bankers Life v. All Defendants

165.     Paragraphs 1 through 164 of this Complaint are fully incorporated herein by reference.

166.     Defendants, by engaging in the conduct described above, wrongfully obtained and exploited Bankers Life's confidential/proprietary information and trade secrets.

167.     It is inequitable for Defendants to retain these benefits without payment and disgorgement of their resulting profits to Bankers Life.

168.     As a matter of law, it is necessary to impose a constructive trust for the benefit of Bankers Life over all profits, advantages and payments received by Defendants, by virtue of their wrongful acts.

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

## COUNT IX:  Unfair Competition
## Bankers Life v. All Defendants

169.     Paragraphs 1 through 167 of this Complaint are fully incorporated herein by reference.

170.     Defendants, by engaging in the conduct described above, including:  (a) breaching of contractual, common law and  fiduciary duties of loyalty, good faith and fair dealing owed by the Individual Defendants to Bankers Life; (b) misappropriating, disclosing and misusing confidential/proprietary information and trade secrets of Bankers Life; and (c) interfering by improper means with Bankers Life's relationships with its agents, clients and policyholders; which acts are inextricable intertwined, has engaged in unfair competition with Bankers Life.

171.    Defendants' conduct was and is willful, intentional and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Bankers Life.

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

**COUNT X:  Fraud and Related Activity in Connection With Computers – 18 U.S.C. § 1030**
**Bankers Life v. Zelekovitz, Phillips, Quickle, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley and Manson**

172.    Paragraphs 1 through 171 of this Complaint are fully incorporated herein by reference.

173.    Bankers Life is a "person" under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(e)(12).

174.    The Bankers Life computer(s) from which Zelekovitz, Phillips, Quickle, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley and Manson obtained the records of policyholders is a "protected computer" as it was an electrical high speed data processing device that performed storage functions, and it was used in interstate commerce or communications.  18 U.S.C. § 1030(e)(1)-(2).

175.    By engaging in the conduct described herein, Zelekovitz, Phillips, Quickle, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley and Manson intentionally accessed a computer while exceeding their authorized access, and obtained information from a protected computer, in violation of 18 U.S.C. § 1030(a)(2)(C).

176.    As a result of Zelekovitz, Phillips, Quickle, D'Aurora, Dorman, Dunkel, Ford, Houy, Ley and Manson engaging in the conduct described herein, Bankers Life has suffered monetary losses as well as irreparable harm requiring preliminary and permanent injunctive relief.

177.     As a result of these multiple violations of the CFAA, Bankers Life is entitled to compensatory damages and injunctive relief pursuant to 18 U.S.C. § 1030(g).

WHEREFORE, Bankers Life requests that the Court grant the relief set forth in its Prayer for Relief below.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Bankers Life requests the following relief against Defendants:

(a)     That Defendants be immediately and permanently enjoined from using, disclosing, or transmitting for any purpose the confidential/proprietary information and trade secrets of Bankers Life, including but not limited to confidential rate information, sales manuals, customer lists, policyholder cards, contact data and any confidential policyholder information including, without limitation, the policyholders' names, addresses, contact information, PHI, dates of birth, social security numbers, and the policies each policyholder has with Bankers Life, the coverage provided by those policies, and the premiums paid by the policyholders;

(b)     That Defendants, and all persons acting in concert with them or on their behalf, be enjoined from soliciting, servicing or doing business with any policyholder of Bankers Life for a period of twenty-four (24) months as provided in Bankers Life's BSM, USV and Agent Contracts, which period shall run from the date of the Court's Order;

(c)     That Defendants, and all persons acting in concert with them or on their behalf, be enjoined from directly or indirectly contacting or soliciting any agent or employee of Bankers Life to curtail, resign or sever a relationship with Bankers Life;

(d)     That Defendants be prohibited from aiding, abetting or encouraging any other persons or entities to do any of the aforementioned acts;

(e)     That Defendants, and anyone acting in concert or participation with him be further ordered to return to Bankers Life any and all property of Bankers Life in their possession, whether in original, electronic, copied, computerized, handwritten or any other reproduced form;

(f)     An accounting of all opportunities usurped and diverted from Bankers Life by all Defendants, including Success Financial;

(g)     Compensatory damages, including business costs and resulting business losses, in an amount to be determined by the evidence presented at trial;

(h)     An award of punitive damages in an amount to be determined by the evidence presented at trial;

(i)      An award of attorneys' fees, costs and expenses expended herein as allowed by law, including pursuant to the Pennsylvania Uniform Trade Secrets Act;

(j)      An award of prejudgment interest as allowed by law; and

(k)     Any and all other legal or equitable relief which this Court deems just, equitable and proper.

Respectfully submitted,

*/s/ Shannon H. Paliotta*

Theodore A. Schroeder, (PA #80559)
  tschroeder@littler.com
Shannon Huygens Paliotta, (PA #91000)
  spaliotta@littler.com
**LITTLER MENDELSON, P.C.**
625 Liberty Avenue - 26th Floor
Pittsburgh, PA  15222
(412) 201-7624 / 7631 (phone)
(412) 774-1959 (fax)

*Attorneys for Plaintiff*
*Bankers Life and Casualty Company*

Dated: February 24, 2012

Firmwide:109428289.1 999999.2116